UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE GRECO; THE SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> CITY OF NEW YORK; and DERMOT SHEA, in his official capacity as Commissioner of the New York City Police Department, <br><br> Defendants. | No. <br><br><br> **COMPLAINT** |

Plaintiffs GEORGE GRECO; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC., by and through their undersigned counsel, as and for their Complaint against Defendants CITY OF NEW YORK and DERMOT SHEA, allege as follows:

1. This 42 U.S.C. § 1983 action challenges the inability of ordinary law-abiding citizens to obtain licenses to carry handguns in New York City. As explained herein, law-abiding citizens have a fundamental right to bear arms—including, specifically, operable modern handguns—for the "core" purpose of self-protection. The only way that a private citizen can exercise this right in New York City is by obtaining a license from the New York City Police Department. To obtain this license, the person must (among other things) meet a highly restrictive "proper cause" standard that requires a showing of special or heightened need. This standard acts to ban all typical and average law-abiding citizens from obtaining licenses as they, by definition, are not able to show special or heightened need. However, all people, not just those with special or heightened needs, have a fundamental right to bear arms by carrying handguns, away from their homes and in public, for the purpose of self-defense.

2. Plaintiffs acknowledge that the Second Circuit's prior decision in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012), likely mandates dismissal of this action. This is a good faith attempt to change the law.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

4. This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws of the City and/or State of New York and/or within the geographic confines of the State of New York.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1). Local Civil Rule 18(a) designates the Manhattan Courthouse.

## PARTIES

6. Plaintiff George Greco is a citizen and resident of the State of New York residing in Rockaway (Queens). Mr. Greco is a 61 year-old man who is married and has 2 children. Mr. Greco is a principal of Midhattan Woodworking Co.

7. Plaintiff The Second Amendment Foundation ("SAF") is a non-profit organization incorporated under the laws of the State of Washington with its office in Bellevue, Washington (King County).

8. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California (Sacramento County).

9. Defendant City of New York is a municipal corporation incorporated under the laws of the State of New York.

10. The New York City Police Department (or "NYPD") is an agency of the City of New York that is not amenable to suit in its own name.

11. Defendant Dermot Shea is the Police Commissioner of the New York City Police Department, who is responsible for acting as the "licensing officer" issuing handgun licenses in the City of New York pursuant to N.Y. Penal Law § 400.00. This action asserts claims against Commissioner Shea only in his official capacity.

## CONSTITUTIONAL PROVISIONS

12. The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

13. The Fourteenth Amendment provides in pertinent part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

## PERTINENT NEW YORK STATE LAWS

14. It is illegal to possess or carry a handgun in the State of New York, including within one's home, unless one holds a handgun license issued pursuant to § 400.00 of the New York Penal Law.  *See* N.Y. Penal Law §§ 265.01-B, 265.20(a)(3). The unlicensed possession of a handgun and ammunition away from one's home or place of business is a class C felony, subject to a mandatory minimum sentence of 3.5 years. *See id.* §§ 70.02(1)(b), 70.02(3)(b),

265.03(3). Otherwise, unlicensed handgun possession is a class E felony with a minimum sentence of 1.5 years. *See id.* §§ 70.02(3)(d), 265.01-B.

15. To obtain a license to possess or carry a handgun, a person must apply "to the licensing officer in the city or county, as the case may be, where the applicant resides, is principally employed or has his or her principal place of business as merchant or storekeeper." N.Y. Penal Law § 400.00(3)(a). In New York City, the "licensing officer" is "the police commissioner." *Id.* § 265.00(10).

16. Once issued, a New York handgun license "not otherwise limited as to place or time of possession, shall be effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city." N.Y. Penal Law § 400.00(6).

17. New York law authorizes the issuance of handgun licenses for the purposes:

> to (a) *have and possess in his dwelling by a householder*; (b) *have and possess in his place of business by a merchant or storekeeper*; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed by a justice of the supreme court in the first or second judicial departments, or by a judge of the New York city civil court or the New York city criminal court; (e) have and carry concealed while so employed by a regular employee of an institution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefor by such commissioner, warden, superintendent or head keeper; (f) *have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof*; and (g) have, possess, collect and carry antique pistols[.]

N.Y. Penal Law § 400.00(2) (emphasis added).

18. The only handgun licensing purpose that would permit a typical law-abiding citizen to carry a handgun in public for the purpose of self-protection is a license under subpart

-4-

(f) of N.Y. Penal Law § 400.00(2) "to . . . have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof." No provision of State law authorizes the issuance of a license for the purpose of permitting a typical law-abiding citizen to carry a handgun in public in a non-concealed manner.

19. The Court of Appeals has upheld the power of licensing officers to issue subpart (f) licenses "to . . . have and carry concealed" subject to restrictions such as "hunting and target shooting." *O'Connor v. Scarpino*, 83 N.Y.2d 919, 921, 615 N.Y.S.2d 305, 306 (1994) (a licensing officer's "power to determine the existence of 'proper cause' for the issuance of a license necessarily and inherently includes the power to restrict the use to the purposes that justified the issuance"). A person carrying a handgun in violation of a license restriction faces the possibility of suspension or revocation of their license.

### THE CITY'S ISSUANCE OF LICENSES TO CARRY HANDGUN

20. The Rules of the City of New York authorize Commissioner Shea and the New York City Police Department to issue five types of handgun licenses. *See* 38 RCNY § 5-01(a)-(e). Only two of these licenses can authorize a typical person living in New York City to carry a handgun in public for the purpose of self-protection. First, a "Carry Business License . . . is an unrestricted class of license which permits the carrying of a handgun concealed on the person." *Id.* § 5-01(b). It is available to those who, pertinently, "[r]eside or maintain a principal place of business within the confines of New York City." *Id.* § 5-02(); *see also id.* § 5-03. Second, a person who has a New York handgun license from outside New York City can apply for a "Special Carry Business License . . . permitting the carrying of a concealed handgun on the person while the licensee is in New York City." *See id.* § 5-01(e)(1). The remaining licenses do not authorize people to carry handguns in public for self-protection because they authorize carry

only in "a specific business or residence location," or only when the licensee "is actually engaged in" work "as a security guard or gun custodian," or (in the case of a "Limited Carry Business License") only while the licensee is going "to and from specific locations during the specific days and times set forth on the license." *See id.* § 5-01(a), (c), (d), (e)(2).

21. The Rules of the City of New York provide that, in order to obtain a Carry Business License or a Special Carry Business License, an applicant must "show 'proper cause.'" 38 RCNY § 5-03. The Rules define "proper cause" as follows:

> "Proper cause" is determined by a review of all relevant information bearing on the claimed need of the applicant for the license. The following are examples of factors which will shall be considered in such a review.
>
> (a) Exposure of the applicant by reason of employment or business necessity to extraordinary personal danger requiring authorization to carry a handgun.
>
> *Example:* Employment in a position in which the applicant routinely engages in transactions involving substantial amounts of cash, jewelry or other valuables or negotiable items. In these instances, the applicant shall furnish documentary proof that her/his employment actually requires that s/he be authorized to carry a handgun, and that s/he routinely engages in such transactions.
>
> (b) Exposure of the applicant to extraordinary personal danger, documented by proof of recurrent threats to life or safety requiring authorization to carry a handgun.
>
> *Example:* Instances in which Police Department records demonstrate that the life and well-being of an individual is endangered, and that s/he should, therefore, be authorized to carry a handgun. The factors listed above are not all inclusive, and the License Division will consider any proof, including New York City Police Department records, which document the need for a handgun license. It should be noted, however, that the mere fact that an applicant has been the victim of a crime or resides in or is employed in a "high crime area," does not establish "proper cause" for the issuance of a carry or special handgun license.   [38 RCNY § 5-03]

22. In addition, the Rules of the City of New York require a person seeking a Carry Business License or a Special Carry Business License to submit a "letter of necessity [that]

explains the need for the license." 38 RCNY § 5-05(b)(8)(i). Pertinently, "the letter of necessity shall contain . . . [a] detailed description of the applicant's employment and an explanation of why the employment requires the carrying of a concealed handgun" and "[a] statement acknowledging that the handgun shall only be carried during the course of and strictly in connection with the applicant's job, business or occupational requirements, as described herein." *Id.* § 5-05(b)(8)(ii)(A)-(B). The letter of necessity requirements make no reference to the need for a defensive firearm outside the context of employment. *See id.* § 5-05(b)(8)(ii)(A)-(G).

### DEFENDANTS' APPLICATION OF THE CHALLENGED LAWS, POLICIES, CUSTOMS AND PRACTICES

23. Plaintiff George Greco obtained a Carry Business License from Commissioner Shea and the New York City Police Department in 2003. He renewed the Carry Business License in 2006, 2009, 2012 and 2015.

24. In June 2018, Mr. Greco submitted an application to renew his then-current Carry Business License, which would expire on June 25, 2019. Mr. Greco provided the same essential letter of necessity and documentation that had provided since 2003.

25. In a "Notice of Disapproval of Renewal Application" dated November 12, 2018, the New York City Police Department notified Mr. Greco that it was denying his application to renew his Carry Business License because "the documentation you provided is insufficient because it does not establish 'proper cause' for a Business Carry License[.]" The letter stated that "you failed to provide any supporting documentation of recurrent threats, or any threats, to your life or safety while conducting business." The letter stated further that Mr. Greco had "failed to provide bank statements with corresponding deposit slips showing large cash deposits." The letter concluded that:

> [T]he documentation that you have provided does not establish that you are in extraordinary personal danger; you have not demonstrated a special

need for self- protection distinguishable from that of the general community or of persons engaged in the same profession. Therefore, your application for renewal of your Business Carry license is disapproved.

26. Mr. Greco requested an administrative appeal within the New York City Police Department. Among other things, he submitted the requested bank deposit records, as well as documentation that his original application had included them.

27. By a "Notice of Disapproval After Appeal" dated April 22, 2019, the New York City Police Department denied Mr. Greco's appeal. The letter stated that Mr. Greco's cash payments to workers "are not a sufficient to establish the requisite 'proper cause' for a Carry Business handgun license." Furthermore, the NYPD asserted the additional ground that "[w]hen the basis for a carry license stems from the applicant's business, the Rules of the City of New York require that the applicant's principal place of business be located in New York City. 38 RCNY Chapter 5." While acknowledging that Mr. Greco "may have an office in his house," the NYPD found it "evident that Mr. Greco's principal place of business in New Jersey." The letter acknowledged that Mr. Greco had listed his business address in New Jersey when he had first applied for a Carry Business license in 2003.

28. As a result of Defendants' denial of his Carry Business license, Mr. Greco is no longer legally authorized to carry a handgun in public for the purpose of self-protection, and he refrains from doing so out of fear that Defendants would charge him with criminal offenses and pursue adverse action against the "Residence Premises" license he continues to hold (which does not authorize carry in public).

29. Plaintiff SAF has over 650,000 members and supporters nationwide, including in the City and State of New York. The purposes of SAF include promoting both the exercise of the right to keep and bear arms and education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms. SAF also promotes research and

education on the consequences of abridging the right to keep and bear arms and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens.

30. Plaintiff FPC has hundreds of thousands of members and supporters nationwide, including in the City and State of New York. The purposes of FPC include defending and promoting the People's rights, especially but not limited to the Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

31. The New York City Police Department has denied licenses to carry handguns to members of both SAF and FPC and will, by all indications, continue to do so in the future. Plaintiff George Greco is a member of both SAF and FPC.

32. Members, supporters who possess all the indicia of membership and similarly situated members of the public have contacted both SAF and FPC to ask questions obtaining licenses to carry handguns in New York City, including questions about how to address license denials, how to obtain authorization to carry a handgun in the City, and specifically, how to try to meet the "proper cause" requirement set forth in 38 RCNY § 5-03. In response, representatives of SAF and FPC have spent time, money and other resources answering questions and providing advice. Furthermore, members of both SAF and FPC, as well as supporters who possess all the indicia of membership and similarly situated members of the public, may face criminal charges or other adverse action in the future on account of the allegation that they violated N.Y. Penal Law §§ 265.01-B and/or 265.03(3), as well as the Rules of the City of New York and the restrictions on their handgun license, all of which violations result from the inability of ordinary

citizens to meet the "proper cause" standard, at least as articulated in the City of New York. SAF and FPC may in that instance provide individuals with support in the form of advice and referrals to counsel. All of these actions deplete the time, energy and money of SAF and FPC and their representatives and prevent SAF and FPC and their representatives from spending their time, energy and money to pursue other organizational objectives. Furthermore, it is difficult or impossible to calculate the actual monetary "cost" of lost opportunities

33. SAF and FPC join this action to redress discernable impacts that the challenged laws, policies and practices cause to themselves, as well as, to the extent they are able,[1] on behalf of their members, supporters who possess all the indicia of membership and similarly situated members of the public who seek to exercise their right to bear arms.

34. FPC has been adversely and directly harmed in having expended and diverted organizational resources to defend the fundamental rights of its members and supporters, including Plaintiffs Bennett and Hucker, against Defendants' Regulatory Scheme, including through this action.

### CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF LAW

35. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). It is "fully applicable to the States." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *accord Caetano v. Massachusetts*, 577 U.S. ___, 136 S. Ct. 1027, 1027 (2016).

---

[1] Under Second Circuit precedent, organizations do not have associational standing in § 1983 actions. *See, e.g., Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Here, however, this is irrelevant. "It is well settled that where, as here, multiple parties seek the same relief, 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (*quoting Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (other citation omitted)).

36.     "[T]he core lawful purpose" of the Second Amendment is "self-defense." *Heller*, 554 U.S. at 630; *see also id.* at 592, 599; *see also McDonald*, 561 U.S. at 767.

37.     If a state or municipality requires its citizens to obtain licenses or registrations in order to possess handguns, then it may not refuse to issue the requisite licenses and registrations to people who are otherwise qualified. *See Heller*, 554 U.S. at 635 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home.").

38.     The laws, policies, customs and practices of the City of New York, including the NYPD Defendant Commissioner Shea, cause the injuries complained of in this action. Specifically, by requiring individuals to meet the "proper cause" standard set forth in 38 RCNY § 5-03, and by requiring individuals to have businesses located within New York City, the Defendants have prevented Plaintiff Greco and virtually all other typical or average people from obtaining the license that is needed to exercise the right to bear arms for its core purpose, self-protection, while in the City of New York. Furthermore, in no part because the challenged restrictions sweep so broadly, these same actions cause the complained of losses to the resources and opportunities of SAF and FPC.

39.     Defendants, having acted under color of law, policy, custom or practice to subject the Plaintiffs to the deprivation of their right to bear arms, are liable under 42 U.S.C. § 1983 "in an action at law, suit in equity, or other proper proceeding for redress[.]"

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

    i.     a declaratory judgment that the "proper cause" requirement set forth in N.Y. Penal Law § 400.00(3)(f) has no plainly legitimate sweep and is unconstitutional in all applications, or alternatively, is unconstitutional to the extent construed to require a special or heightened showing of need that a typical or average law-abiding individual would not be able to meet;

<blockquote>

ii. a declaratory judgment that Defendants' construction of "proper cause," as set forth 38 RCNY § 5-03, has no plainly legitimate sweep and is unconstitutional in all applications, or alternatively, is unconstitutional to the extent construed to require a special or heightened showing of need that a typical or average law-abiding individual would not be able to meet;

iii. a declaratory judgment that Defendants' requirement that individuals have a place of business (in New York City or otherwise) to obtain or hold a Business Carry or Special Business Carry license has no plainly legitimate sweep and is unconstitutional in all applications, or alternatively, is unconstitutional to the extent applied to prevent a typical or average law-abiding individual from being able to exercise his or her right to bear arms by carrying handguns in public;

iv. a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice of the injunction, from requiring "proper cause" under N.Y. Penal Law § 400.00(3)(f) and 38 RCNY § 5-03 (and any other pertinent laws, customs, policies or practices), or alternatively, restraining said parties from using a "proper cause" standard that would require a special or heightened showing of need that a typical or average law-abiding individual would not be able to meet;

v. a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice of the injunction, from requiring applicants for licenses to carry handguns (such as but not limited to Business Carry and Special Business Carry licenses) to have a place of business in New York City;

vi. additionally and/or alternatively, a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice, from enforcing Penal Law §§ 265.01-B, 265.03(3) and/or from revoking or suspending handgun licenses or taking other adverse action, in respect of individuals who carry handguns for self-protection outside the home, until such time as Defendants no longer condition licenses to carry handguns on "proper cause" and/or a special or heightened showing of need and/or a place of business in New York City;

vii. such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

viii. attorney's fees, costs and other appropriate expenses pursuant to 42 U.S.C. § 1988.

</blockquote>

Dated: New York, New York
November 4, 2020

                      DAVID JENSEN PLLC

                      By: _/s/ David D. Jensen_
                          David D. Jensen, Esq.
                      33 Henry Street
                      Beacon, New York 12508
                      Tel:  212.380.6615
                      Fax:  917.591.1318
                      david@djensenpllc.com
                      *Attorney for Plaintiffs*