UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE GRECO; JEFFREY ORTIZ; STEVEN INSALACO; JOHN J. WINTERS; MICHAEL RICATTO; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC., | No. 20-cv-09265 (LJL) |
| Plaintiffs, | **AMENDED COMPLAINT** |
| -against- | |
| CITY OF NEW YORK; and DERMOT SHEA, in his official capacity as Commissioner of the New York City Police Department, | |
| Defendants. | |

Plaintiffs GEORGE GRECO; JEFFREY ORTIZ; STEVEN INSALACO; JOHN J. WINTERS; MICHAEL RICATTO; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC., by and through their undersigned counsel, as and for their Complaint against Defendants CITY OF NEW YORK and DERMOT SHEA, allege as follows:

1.      This 42 U.S.C. § 1983 action challenges the inability of ordinary law-abiding citizens to obtain licenses to carry handguns in New York City. As explained herein, law-abiding citizens have a fundamental right to bear arms—including, specifically, operable modern handguns—for the "core" purpose of self-protection. The only way that a private citizen can exercise this right in New York City is by obtaining a license from the New York City Police Department. To obtain this license, the person must (among other things) meet a highly restrictive "proper cause" standard that requires a showing of special or heightened need. This standard acts to ban all typical and average law-abiding citizens from obtaining licenses as they, by definition, are not able to show special or heightened need. However, all people, not just those with special

or heightened needs, have a fundamental right to bear arms by carrying handguns, away from their homes and in public, for the purpose of self-defense.

2.      Plaintiffs acknowledge that the Second Circuit's prior decision in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012), likely mandates dismissal of this action. This is a good faith attempt to change the law.

<u>JURISDICTION AND VENUE</u>

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

4.      This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws of the City and/or State of New York and/or within the geographic confines of the State of New York.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1). Local Civil Rule 18(a) designates the Manhattan Courthouse.

<u>PARTIES</u>

6.      Plaintiff George Greco is a citizen and resident of the State of New York residing in Rockaway (Queens County). Mr. Greco is a 61 year-old man who is married and has 2 children. Mr. Greco is a principal of Midhattan Woodworking Co.

7.      Plaintiff Jeffrey Ortiz is a citizen and resident of the State of New York residing in Brooklyn (Kings County). Mr. Ortiz is a 41 year-old man who is married and has a young daughter. Mr. Ortiz operates a liquor store (Da Liquor Store LLC) in the East New York neighborhood of Brooklyn, where he grew up and continues to live.

8.      Plaintiff Steven Insalaco is a citizen and resident of the State of New York who is currently residing in Austerlitz (Columbia County), with a second residence in Manhattan (New

York County). Mr. Insalaco is a 75 year-old man who is married and is a principal in Calgary Enterprises, Inc.

9.      Plaintiff John J. Winters is a citizen and resident of the State of New York residing in Staten Island (Richmond County). Mr. Winters is a 78 year-old man who is married and has 4 grown children. Mr. Winters is a principal of AD-Meyers Uniforms.

10.     Plaintiff Michael Ricatto is a citizen and resident of the State of Florida residing in Deerfield (Broward County). Mr. Ricatto has a second residence in Kew Gardens (Queens County). Mr. Ricatto is a 64 year-old man with 4 children. Mr. Ricatto is a principal of Fratelli Ricatto Enterprises, a business based in Brooklyn (Kings County), New York.

11.     Plaintiff Second Amendment Foundation ("SAF") is a non-profit organization incorporated under the laws of the State of Washington with its office in Bellevue, Washington (King County).

12.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California (Sacramento County).

13.     Defendant City of New York is a municipal corporation incorporated under the laws of the State of New York.

14.     The New York City Police Department (or "NYPD") is an agency of the City of New York that is not amenable to suit in its own name.

15.     Defendant Dermot Shea is the Police Commissioner of the New York City Police Department, who is responsible for acting as the "licensing officer" issuing handgun licenses in the City of New York pursuant to N.Y. Penal Law § 400.00. This action asserts claims against Commissioner Shea only in his official capacity.

## CONSTITUTIONAL PROVISIONS

16.    The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

17.    The Fourteenth Amendment provides in pertinent part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

## PERTINENT NEW YORK STATE LAWS

18.    It is illegal to possess or carry a handgun in the State of New York, including within one's home, unless one holds a handgun license issued pursuant to § 400.00 of the New York Penal Law.  *See* N.Y. Penal Law §§ 265.01-B, 265.20(a)(3). The unlicensed possession of a handgun and ammunition away from one's home or place of business is a class C felony, subject to a mandatory minimum sentence of 3.5 years. *See id.* §§ 70.02(1)(b), 70.02(3)(b), 265.03(3). Otherwise, unlicensed handgun possession is a class E felony with a minimum sentence of 1.5 years. *See id.* §§ 70.02(3)(d), 265.01-B.

19.    To obtain a license to possess or carry a handgun, a person must apply "to the licensing officer in the city or county, as the case may be, where the applicant resides, is principally employed or has his or her principal place of business as merchant or storekeeper." N.Y. Penal Law § 400.00(3)(a). A person with a "part-time residence in New York" is eligible to apply.

*Osterweil v. Bartlett*, 21 N.Y.3d 580, 519, 977 N.Y.S.2d 153 (2013). In New York City, the "licensing officer" is "the police commissioner." N.Y. Penal Law § 265.00(10).

20.    Once issued, a New York handgun license "not otherwise limited as to place or time of possession, shall be effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city." N.Y. Penal Law § 400.00(6).

21.    New York law authorizes the issuance of handgun licenses for the purposes:

> to (a) *have and possess in his dwelling by a householder*; (b) *have and possess in his place of business by a merchant or storekeeper*; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed by a justice of the supreme court in the first or second judicial departments, or by a judge of the New York city civil court or the New York city criminal court; (e) have and carry concealed while so employed by a regular employee of an institution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefor by such commissioner, warden, superintendent or head keeper; (f) *have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof*; and (g) have, possess, collect and carry antique pistols[.]

> N.Y. Penal Law § 400.00(2) (emphasis added).

22.    The only handgun licensing purpose that permits a typical law-abiding citizen to carry a modern handgun in public for the purpose of self-protection is a license under subpart (f) of N.Y. Penal Law § 400.00(2) "to . . . have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof." No provision of State law authorizes the issuance of a license for the purpose of permitting a typical law-abiding citizen to carry a handgun in public in a non-concealed manner.

23.     The Court of Appeals has upheld the power of licensing officers to issue subpart (f) licenses "to . . . have and carry concealed" subject to restrictions such as "hunting and target shooting." *O'Connor v. Scarpino*, 83 N.Y.2d 919, 921, 615 N.Y.S.2d 305, 306 (1994) (a licensing officer's "power to determine the existence of 'proper cause' for the issuance of a license necessarily and inherently includes the power to restrict the use to the purposes that justified the issuance"). A person carrying a handgun in violation of a license restriction faces the possibility of suspension or revocation of their license.

## THE CITY'S ISSUANCE OF LICENSES TO CARRY HANDGUN

24.     The Rules of the City of New York authorize Commissioner Shea and the New York City Police Department to issue five types of handgun licenses. *See* 38 RCNY § 5-01(a)-(e). Three of these licenses can authorize a typical person to carry a handgun in public for the purpose of self-protection, at least under some circumstances. First, a "Carry Business License . . . is an unrestricted class of license which permits the carrying of a handgun concealed on the person." *Id.* § 5-01(b). Second, a "Limited Carry Business License . . . is a restricted handgun license which permits the licensee to carry the handgun listed on the license concealed on the person to and from specific locations during the specific days and times set forth on the license." *Id.* § 5-01(c). To obtain either a Carry Business License or a Limited Carry Business License, an individual must, pertinently, "[r]eside or maintain a principal place of business within the confines of New York City." *Id.* § 5-02(g); *see also id.* § 5-03. Third, and finally, a person who has a New York handgun license from outside New York City can apply for a "Special Carry Business License . . . permitting the carrying of a concealed handgun on the person while the licensee is in New York City." *See id.* § 5-01(e)(1). The remaining licenses do not authorize people to carry handguns in public for self-protection because they authorize carry only in "a specific business or residence location," or

only when the licensee "is actually engaged in" work "as a security guard or gun custodian." *See id.* § 5-01(a), (d), (e)(2).

25.     The Rules of the City of New York provide that, in order to obtain a Carry Business License, Limited Carry Business License or a Special Carry Business License, an applicant must "show 'proper cause.'" 38 RCNY § 5-03. The Rules define "proper cause" as follows:

"Proper cause" is determined by a review of all relevant information bearing on the claimed need of the applicant for the license. The following are examples of factors which will shall be considered in such a review.

(a) Exposure of the applicant by reason of employment or business necessity to extraordinary personal danger requiring authorization to carry a handgun.

*Example:* Employment in a position in which the applicant routinely engages in transactions involving substantial amounts of cash, jewelry or other valuables or negotiable items. In these instances, the applicant shall furnish documentary proof that her/his employment actually requires that s/he be authorized to carry a handgun, and that s/he routinely engages in such transactions.

(b) Exposure of the applicant to extraordinary personal danger, documented by proof of recurrent threats to life or safety requiring authorization to carry a handgun.

*Example:* Instances in which Police Department records demonstrate that the life and well-being of an individual is endangered, and that s/he should, therefore, be authorized to carry a handgun. The factors listed above are not all inclusive, and the License Division will consider any proof, including New York City Police Department records, which document the need for a handgun license. It should be noted, however, that the mere fact that an applicant has been the victim of a crime or resides in or is employed in a "high crime area," does not establish "proper cause" for the issuance of a carry or special handgun license.     [38 RCNY § 5-03]

26.     In addition, the Rules of the City of New York require a person seeking a Carry Business License, Limited Carry Business License or a Special Carry Business License to submit a "letter of necessity [that] explains the need for the license." 38 RCNY § 5-05(b)(8)(i). Pertinently, "the letter of necessity shall contain . . . [a] detailed description of the applicant's employment and

an explanation of why the employment requires the carrying of a concealed handgun" and "[a] statement acknowledging that the handgun shall only be carried during the course of and strictly in connection with the applicant's job, business or occupational requirements, as described herein." *Id.* § 5-05(b)(8)(ii)(A)-(B). The letter of necessity requirements make no reference to the need for a defensive firearm outside the context of employment. *See id.* § 5-05(b)(8)(ii)(A)-(G).

DEFENDANTS' APPLICATION OF THE
CHALLENGED LAWS, POLICIES, CUSTOMS AND PRACTICES

Plaintiff George Greco

27.     Plaintiff George Greco obtained a Carry Business License from the New York City Police Department in 2003. He renewed the Carry Business License in 2006, 2009, 2012 and 2015.

28.     In June 2018, Mr. Greco submitted an application to renew his then-current Carry Business License, which would expire on June 25, 2018. Mr. Greco provided the same essential documentation that he had provided since 2003.

29.     In a "Notice of Disapproval of Renewal Application" dated November 12, 2018, the New York City Police Department notified Mr. Greco that it was denying his application to renew his Carry Business License because "the documentation you provided is insufficient because it does not establish 'proper cause' for a Business Carry License[.]" The letter stated that "you failed to provide any supporting documentation of recurrent threats, or any threats, to your life or safety while conducting business." The letter stated further that Mr. Greco had "failed to provide bank statements with corresponding deposit slips showing large cash deposits." The letter concluded that:

> [T]he documentation that you have provided does not establish that you are in extraordinary personal danger; you have not demonstrated a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession. Therefore, your application for renewal of your Business Carry license is disapproved.

30.     Mr. Greco requested an administrative appeal within the New York City Police Department. Among other things, he submitted the requested bank deposit records, as well as documentation that his original application had included them.

31.     By a "Notice of Disapproval After Appeal" dated April 22, 2019, the New York City Police Department denied Mr. Greco's appeal. The letter stated that Mr. Greco's documentation was "not . . . sufficient to establish the requisite 'proper cause' for a Carry Business handgun license." The letter further asserted that Mr. Greco could not obtain a license because the primary place of his business was in New Jersey.

32.     As a result of Defendants' denial of his Carry Business license, Mr. Greco is no longer legally authorized to carry a handgun in public for the purpose of self-protection, and he refrains from doing so out of fear that Defendants would charge him with criminal offenses and pursue adverse action against the "Residence Premises" license he continues to hold (which does not authorize the carry of operable handguns in public).

33.     Mr. Greco is a member of Plaintiffs Second Amendment Foundation and Firearms Policy Coalition.

<u>Plaintiff Jeffrey Ortiz</u>

34.     Plaintiff Jeffrey Ortiz is originally from, and continues to live in, the East New York neighborhood of Brooklyn, which is one of the highest crime areas in the City of New York. Mr. Ortiz owns and operates a liquor store in the neighborhood. In 2015, Mr. Ortiz obtained a Limited Carry Business License from the New York City Police Department. This license permitted Mr. Ortiz to carry a handgun between the hours of 6:00 a.m. and 12:00 a.m. (midnight) on all days of the week.

35.     On (or about) August 15, 2018, Mr. Ortiz submitted an application to renew his then-current Limited Carry Business License, which would expire on September 26, 2018. Mr. Ortiz provided the same essential documentation that he had provided in 2015.

36.     In an email sent on June 24, 2019, the New York City Police Department notified Mr. Ortiz that it had "determined that you have failed to establish proper cause to have your license renewed" in that he had failed to adequately document either any incidents that showed "extraordinary personal danger" or "any reference to cash deposits." The email requested "an updated Letter of Necessity," which Mr. Ortiz thereafter provided.

37.     The New York City Police Department then offered to convert Mr. Ortiz's application to one for a "Business Premises" license, which would allow him to keep a gun at his store, but not to carry it outside the story. Mr. Ortiz declined this offer.

38.     The New York City Police Department next offered to issue Mr. Ortiz a Limited Carry Business License, which would allow him to carry a gun while traveling to and from home and the bank. Mr. Ortiz also declined this offer.

39.     In a "Notice of Disapproval of Renewal Application" dated January 7, 2020, the New York City Police Department notified Mr. Ortiz that it was denying his application to renew his Limited Carry Business License because "the documentation you provided is insufficient because it does not establish 'proper cause' for a Limited Carry License[.]" The letter stated that Mr. Ortiz's documentation "does not reflect substantial cash deposits and/or withdrawals and you failed to provide any documentation of recurrent threats (or any threats) to your life or safety while conducting business." The letter concluded that:

> [B]ased on the documentation that you have provided, your business does not place you in extraordinary personal danger and you failed to demonstrate that you have a special need for self-protection distinguishable from that of the general community or of persons engaged in the same

profession. Therefore, your application for renewal of your Limited Carry handgun license is disapproved.

40.     Mr. Ortiz requested an administrative appeal within the New York City Police Department. Among other things, he argued that the documentation he had submitted showed daily cash deposits of up to $2,000 and weekly cash deposits of up to $3,000, which were "substantial," and that Mr. Ortiz had provided documentation of a business-related robbery.

41.     By a "Notice of Disapproval After Appeal" dated November 9, 2020, the New York City Police Department denied Mr. Ortiz's appeal. The letter stated that "Mr. Ortiz failed to demonstrate that he is in extraordinary personal danger requiring the issuance of a Carry license."

42.     As a result of Defendants' denial of his Limited Carry Business license, Mr. Ortiz is no longer legally authorized to carry a handgun in public for the purpose of self-protection, and he refrains from doing so out of fear that Defendants would charge him with criminal offenses and pursue adverse action against the "Residence Premises" license he continues to hold (which does not authorize the carry of operable handguns in public).

43.     Mr. Ortiz is a member of Plaintiffs Second Amendment Foundation and Firearms Policy Coalition.

Plaintiff Steven Insalaco

44.     Plaintiff Steven Insalaco holds a handgun license issued pursuant to N.Y. Penal Law § 400.00 in Columbia County, New York. The handgun license is a "license to carry pistols" that does not carry any further restrictions. As such, this handgun license authorizes Mr. Insalaco to "have and carry [a handgun] concealed, without regard to employment or place of possession," pursuant to N.Y. Penal Law § 400.00(2)(f). Pursuant to § 400.00(6), the handgun license is "effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city."

45.     Mr. Insalaco obtained a Special Carry Business License from the New York City Police Department in 2012, which he renewed in 2015.

46.     On (or about) May 24, 2018, Mr. Insalaco submitted an application to renew his then-current Special Carry Business License, which would expire on July 7, 2018. Mr. Insalaco provided the same essential documentation that he had provided in 2012 and 2015.

47.     In a "Notice of Disapproval of Renewal Application" dated January 7, 2020, the New York City Police Department notified Mr. Insalaco that it was denying his application to renew his Special Carry Business License because "the documentation you provided is insufficient because it does not establish 'proper cause' for a Special Carry handgun License[.]" The letter stated that he had not provided "documentation showing that you were in immediate personal danger due to your business" or "showing any threats to your life or any incidents where you were placed in extraordinary personal danger." The letter concluded that:

> [T]he documentation that you have provided does not establish that you are in extraordinary personal danger; you have not demonstrated a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession. Therefore, your application for renewal of your Special Carry license is disapproved.

48.     Mr. Insalaco requested an administrative appeal within the New York City Police Department. Among other things, he argued that they had approved his license application based on the same essential documentation in the past.

49.     By a "Notice of Disapproval After Appeal" dated February 22, 2020, the New York City Police Department denied Mr. Insalaco's appeal. The letter stated that Mr. Insalaco "ha[d] not shown 'proper cause' for a Special Carry Business license." Among other things, the letter stated that "[t]he fact that the License Division previously approved your original and renewal applications does not mean that it can rubberstamp your current renewal application."

-12-

50.     As a result of Defendants' denial of his Special Carry Business license, Mr. Insalaco is no longer legally authorized to carry a handgun in New York City for the purpose of self-protection, and he refrains from doing so out of fear that Defendants would charge him with criminal offenses and could potentially pursue adverse action against the Columbia County handgun license he continues to hold.

51.     Mr. Insalaco is a member of Plaintiffs Second Amendment Foundation and Firearms Policy Coalition.

Plaintiff John J. Winters

52.     Plaintiff John J. Winters first obtained a license to carry a handgun from the New York City Police Department in the 1960s, before the City adopted its current rules and the "Carry Business" nomenclature. The license was an unrestricted license to carry a handgun pursuant to N.Y. Penal Law § 400.00(2)(f) or its predecessor. He renewed this license for nearly four decades. Mr. Winters surrendered this license when he sold his check-cashing business in approximately 2005.

53.     Mr. Winters then started a business (AD-Meyers Uniforms) that provides uniforms and equipment to law enforcement agencies and other first responders. Currently, the business has three locations in Brooklyn, Bronx and Staten Island. In 2014, Mr. Winters obtained a Carry Business License from the New York City Police Department. The Police Department initially denied the license application, but issued a Carry Business License to Mr. Winters following an appeal. He renewed the Carry Business License in 2017.

54.     In early 2020, Mr. Winters submitted an application to renew his then-current Carry Business License, which would expire on April 17, 2020. Mr. Winters provided the same essential documentation that had provided in 2014 and 2017.

55.     In an email sent on July 23, 2020, the New York City Police Department notified Mr. Winters that it had "determined that you have failed to establish proper cause to have your license renewed" in that Mr. Winters had not shown "extraordinary personal danger." The email requested "an updated Letter of Necessity," which Mr. Winters thereafter provided.

56.     In an email sent on November 5, 2020, the New York City Police Department notified Mr. Winters that it was denying his application to renew his Carry Business License:

> The License Division has completed the investigation of your license renewal. Please be advised that we can offer you a Premise Business license. This offer is not negotiable. Please let us know by email if you wish to accept this offer by November 16, 2020. If you wish to accept, the appropriate documents will be sent to you for the conversion to a Premise Business license. Should you decide to refuse this offer, your license renewal for a Business Carry license will be disapproved and you will be afforded the right to appeal this decision.

57.     Mr. Winters declined to accept the Police Department's offer of a Premise Business License.

58.     As a result of Defendants' denial of his Carry Business license, Mr. Winters is no longer legally authorized to carry a handgun in public for the purpose of self-protection, and he refrains from doing so out of fear that Defendants would charge him with criminal offenses.

59.     Mr. Winters is a member of Plaintiffs Second Amendment Foundation and Firearms Policy Coalition.

Plaintiff Michael Ricatto

60.     Plaintiff Michael Ricatto applied for and obtained a Limited Carry Business License from the New York City Police Department in 2013. This license permitted Mr. Ricatto to carry a handgun between the hours of 6:00 a.m. and 6:00 p.m. on Mondays, Wednesdays and Fridays. In 2014, Mr. Ricatto obtained a Carry Business License (i.e. without restrictions based on time or day). Mr. Ricatto renewed his Carry Business License in 2016.

61.     On November 8, 2019, Mr. Ricatto submitted an application to renew his then-current Carry Business License, which would expire on December 4, 2019. Mr. Ricatto provided the same essential documentation that had provided in 2013, 2014 and 2016.

62.     On February 17, 2020, the New York City Police Department sent Mr. Ricatto an email requesting an updated letter of necessity, which Mr. Ricatto thereafter provided.

63.     In a "Notice of Disapproval of Renewal Application" dated July 17, 2020, the New York City Police Department notified Mr. Ricatto that it was denying his application to renew his Carry Business License because "the documentation you provided is insufficient because it does not establish 'proper cause' for a Business Carry License[.]" The letter stated that "you failed to provide any documentation of recurrent threats (or any threats) to your life or safety while traveling and/or conducting your business." The letter concluded that:

> [T]he documentation that you have provided does not establish that you are in extraordinary personal danger; you have not demonstrated a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession. Therefore, your application for renewal of your Business Carry license is disapproved.

64.     As a result of Defendants' denial of his Carry Business license, Mr. Ricatto is no longer legally authorized to carry a handgun in public for the purpose of self-protection, and he refrains from doing so out of fear that Defendants would charge him with criminal offenses.

65.     Mr. Ricatto is a member of Plaintiffs Second Amendment Foundation and Firearms Policy Coalition.

Plaintiffs Second Amendment Foundation & Firearms Policy Coalition

66.     Plaintiff SAF has over 650,000 members and supporters nationwide, including in the City and State of New York. The purposes of SAF include promoting both the exercise of the right to keep and bear arms and education, research, publishing and legal action focusing on the constitutional right to privately own and possess firearms. SAF also promotes research and

education on the consequences of abridging the right to keep and bear arms and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens.

67.     Plaintiff FPC has hundreds of thousands of members and supporters nationwide, including in the City and State of New York. The purposes of FPC include defending and promoting the People's rights, especially but not limited to the Second Amendment right to keep and bear arms, advancing individual liberty and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach and other programs. FPC represents its members and supporters—who include gun owners, prospective gun owners, licensed firearm retailers and others—and brings this action on behalf of itself, its members, including the named Plaintiffs herein, and supporters who possess all the indicia of membership. FPC's members in New York City have been adversely and directly harmed by Defendants' enforcement of the laws, policies, practices and customs challenged herein. Because of Defendants' enforcement of the laws, policies, practices and customs challenged herein, FPC has and continues to suffer a diversion of resources to identify and/or counteract the unlawful actions, as well as a frustration of the organization's mission.

68.     The New York City Police Department has denied licenses to carry handguns to members of both SAF and FPC and will, by all indications, continue to do so in the future.

69.     Members, supporters who possess all the indicia of membership and similarly situated members of the public have contacted both SAF and FPC to ask questions about obtaining licenses to carry handguns in New York City, including questions about how to address license denials and how to try to meet the "proper cause" requirement set forth in 38 RCNY § 5-03. In response, representatives of SAF and FPC have spent time, money and other resources answering

questions and providing advice. Furthermore, members of both SAF and FPC, as well as supporters who possess all the indicia of membership and similarly situated members of the public, may face criminal charges or other adverse action in the future on account of the allegation that they violated N.Y. Penal Law §§ 265.01-B and/or 265.03(3), as well as the Rules of the City of New York and the restrictions on their handgun license, all of which violations result from the inability of ordinary citizens to meet the "proper cause" standard, at least as articulated in the City of New York. SAF and FPC may in that instance provide individuals with support in the form of advice and referrals to counsel. All of these actions deplete the time, energy and money of SAF and FPC and their representatives and prevent SAF and FPC and their representatives from spending their time, energy and money to pursue other organizational objectives. Furthermore, it is difficult or impossible to calculate the actual monetary "cost" of lost opportunities, making these injuries irreparable.

70.     SAF and FPC join this action to redress discernable impacts that the challenged laws, policies, practices and customs cause to themselves, as well as, to the extent they are able,[1] on behalf of their members, supporters who possess all the indicia of membership and similarly situated members of the public who seek to exercise their right to bear arms.

## CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF LAW

71.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). It is

---

[1] Under Second Circuit precedent, organizations do not have associational standing in § 1983 actions. *See, e.g., Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Here, however, this is irrelevant. "It is well settled that where, as here, multiple parties seek the same relief, 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (*quoting Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (other citation omitted)).

"fully applicable to the States." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *accord Caetano v. Massachusetts*, 577 U.S. ___, 136 S. Ct. 1027, 1027 (2016).

72.     "[T]he core lawful purpose" of the Second Amendment is "self-defense." *Heller*, 554 U.S. at 630; *see also id.* at 592, 599; *see also McDonald*, 561 U.S. at 767.

73.     If a state or municipality requires its citizens to obtain licenses or registrations in order to possess handguns, then it may not refuse to issue the requisite licenses and registrations to people who are otherwise qualified. *See Heller*, 554 U.S. at 635.

74.     The laws, policies, practices and customs of Defendant City of New York and Defendant Commissioner Shea cause the injuries complained of in this action. Specifically, by requiring individuals to meet the "proper cause" standard set forth in 38 RCNY § 5-03, and by requiring individuals to have businesses located in New York City, the Defendants have prevented Plaintiffs Greco, Ortiz, Insalaco, Winters, Ricatto and the similarly situated members and supporters of Plaintiffs Second Amendment Foundation and Firearm Policy Coalition, and virtually all other typical or average people from obtaining a license that is needed to exercise the right to bear arms for its core purpose, self-protection, while in the City of New York. Furthermore, in no part because the challenged restrictions sweep so broadly, these same actions cause the complained of losses to the resources and opportunities of SAF and FPC.

75.     Defendants, having acted under color of law, policy, custom or practice to subject the Plaintiffs to the deprivation of their right to bear arms, are liable under 42 U.S.C. § 1983 "in an action at law, suit in equity, or other proper proceeding for redress[.]"

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

  i.     a declaratory judgment that the "proper cause" requirement set forth in N.Y. Penal Law § 400.00(3)(f) has no plainly legitimate sweep and is unconstitutional in all applications, or alternatively, is unconstitutional to

the extent construed to require a special or heightened showing of need that a typical or average law-abiding individual would not be able to meet;

ii.    a declaratory judgment that Defendants' construction of "proper cause," as set forth 38 RCNY § 5-03, has no plainly legitimate sweep and is unconstitutional in all applications, or alternatively, is unconstitutional to the extent construed to require a special or heightened showing of need that a typical or average law-abiding individual would not be able to meet;

iii.    a declaratory judgment that Defendants' requirement that individuals have a place of business (in New York City or otherwise) to obtain or hold a Business Carry, Limited Business Carry or Special Carry license has no plainly legitimate sweep and is unconstitutional in all applications, or alternatively, is unconstitutional to the extent applied to prevent a typical or average law-abiding individual from being able to exercise his or her right to bear arms by carrying handguns in public;

iv.    a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice of the injunction, from requiring "proper cause" under N.Y. Penal Law § 400.00(3)(f) and 38 RCNY § 5-03 (and any other pertinent laws, policies, practices or customs), or alternatively, restraining said parties from using a "proper cause" standard that would require a special or heightened showing of "need" that a typical or average law-abiding individual would not be able to meet;

v.    a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice of the injunction, from requiring applicants for licenses to carry handguns (such as but not limited to Business Carry, Limited Business Carry and Special Carry licenses) to have a place of business in New York City;

vi.    additionally and/or alternatively, a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice of the injunction, from enforcing Penal Law §§ 265.01-B, 265.03(3) and/or from revoking or suspending handgun licenses or taking other adverse action, in respect of individuals who carry handguns for self-protection outside the home, until such time as Defendants no longer condition licenses to carry handguns on "proper cause" and/or a special or heightened showing of need and/or a place of business in New York City;

vii.    additionally and/or alternatively, a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice of the injunction, from enforcing the challenged laws, policies, practices

and customs so as to prevent Plaintiffs Greco, Ortiz, Insalaco, Winters, Ricatto and the similarly situated members and supporters of Plaintiffs Second Amendment Foundation and Firearm Policy Coalition, and all other similarly situated individuals who are legally eligible to possess and acquire firearms, from exercising their fundamental right to bear arms by carrying handguns in public for the purpose of self-defense;

viii.    such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and,

ix.    attorney's fees, costs and other appropriate expenses pursuant to 42 U.S.C. § 1988.

Dated: New York, New York
      January 5, 2021

DAVID JENSEN PLLC

By: _____
    David D. Jensen, Esq.
33 Henry Street
Beacon, New York 12508
Tel: 212.380.6615
Fax: 917.591.1318
david@djensenpllc.com

*Attorney for Plaintiffs*