UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GEORGE GRECO; JEFFREY ORTIZ; STEVEN INSALACO; JOHN J. WINTERS; MICHAEL RICATTO; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC.,

                         Plaintiffs,

      -against-

CITY OF NEW YORK; and DERMOT SHEA, in his official capacity as Commissioner of the New York City Police Department,

                         Defendants.

No. 20-cv-09265 (LJL)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR A PRELIMINARY INJUNCTION AND
TO ADVANCE TRIAL AND ISSUE A PERMANENT INJUNCTION**

David D. Jensen, Esq.
DAVID JENSEN PLLC
33 Henry Street
Beacon, New York 12508
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... *ii*

I)    Introduction and Summary ........................................................................... 1

II)   The Laws and Policies at Issue and their Application to the Plaintiffs .............................. 2

    A)    State Law Prohibits the Unlicensed Possession (or Carry) of Handguns .............. 2

    B)    State Law Governs the Issuance of Pistol Licenses ................................................. 3

    C)    The "Proper Cause" Standard Affords Broad Discretion to Deny and Restrict Licenses on the Basis of "Need" .......................................................................... 5

    D)    New York City's Pertinent Laws and Rules ........................................................ 8

    E)    Defendants' Denial of the Plaintiffs' Renewal Applications ............................... 14

III)  The Court Should Issue a Preliminary Injunction Because the Plaintiffs are Likely to Succeed on the Merits ........................................................................... 18

    A)    Here, the Essential Consideration is the Likelihood of Success on the Merits ..... 18

    B)    Plaintiffs are Likely to Succeed Because the Second Amendment Secures a Personal Right to Carry Handguns for Self-Defense ........................................... 20

IV)   The Court Should Consolidate this Motion with Trial on the Merits and Issue a Permanent Injunction ...................................................................................... 22

V)    Conclusion .................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

Abraham Zion Corp. v. Lebow, 761 F.2d 93 (2d Cir. 1985) ......................................................21

Agudath Israel of America v. Cuomo, 983 F.3d 620 (2d Cir. 2020)...........................................18

Babernitz v. Police Dep't of City of N.Y., 65 A.D.2d 320,
　　411 N.Y.S.2d 309 (1st Dep't 1978) ......................................................................................6

Bando v. Sullivan, 290 A.D.2d 691, 735 N.Y.S.2d 660 (3d Dep't 2002) ....................................8

Bernstein v. Police Dep't of the City of N.Y., 85 A.D.2d 574,
　　445 N.Y.S.2d 716 (1st Dep't 1981) ....................................................................................21

Blank v. Adler, 74 A.D.3d 802, 903 N.Y.S.2d 449 (2d Dep't 2010) ...........................................8

Cantwell v. Connecticut, 310 U.S. 296 (1940)............................................................................7

Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,
　　598 F.3d 30 (2d Cir. 2010) .................................................................................................17

City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687 (1999) ........................21

Connection Distributing Co. v. Reno, 154 F.3d 281 (6th Cir.1998) ..........................................18

Curtis 1000, Inc. v. Suess, 24 F.3d 941 (7th Cir. 1994) ............................................................21

District of Columbia v. Heller, 554 U.S. 570 (2008)............................................................. 1, 19

Drummond v. Fulton Co. Dep't of Family & Children's Servs.,
　　563 F.2d 1200 (5th Cir. 1977) ............................................................................................21

Ernst J. v. Stone, 452 F.3d 186 (2d Cir.2006)...........................................................................19

Ezell v. City of Chicago, 651 F.3d 684 (7th Cir. 2011)..............................................................18

Free the Nipple-Fort Collins v. City of Fort Collins, 916 F.3d 792 (10th Cir. 2019) .................18

In re Bastiani, 23 Misc. 3d 235, 881 N.Y.S.2d 591 (Sup. Ct. Rockland Co. 2008).....................8

In re O'Connor, 154 Misc. 2d 694, 585 N.Y.S.2d 1000, (County Ct., Westchester Co. 1992),
　　aff'd sub nom., O'Connor v. Scarpino, 83 N.Y.2d 919, 615 N.Y.S.2d 305 (1994) ...........6

Int'l Dairy Foods Ass'n v. Amestoy, 92 F.3d 67 (2d Cir. 1996).................................................17

Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70 (2d Cir. 1979)..............................17

Jolly v. Coughlin, 76 F.3d 468 (2d Cir. 1996) ...........................................................................18

Kachalsky v. County of Westchester, 701 F.3d 81 (2d Cir. 2012)...........................................5, 19

Kaplan v. Bratton, 249 A.D.2d 199, 673 N.Y.S.2d 66 (1st Dep't 1998)....................................21

Klenosky v. N.Y. City Police Dep't, 75 A.D.2d 793, 428 N.Y.S.2d 256 (1st Dep't 1980),
　　aff'd, 53 N.Y.2d 685, 421 N.E.2d 503 (1981)......................................................... 6-8, 21

Knight v. Bratton, 48 Misc. 3d 536, 13 N.Y.S.3d 799 (Sup. Ct. N.Y. Co. 2015)....................5, 8

Liberty Coins, LLC v. Goodman, 748 F.3d 682 (6th Cir. 2014).................................................18

Martinek v. Kerik, 294 A.D.2d 221, 743 N.Y.S.2d 80 (1st Dep't 2002)....................................21

McDonald v. Chicago, 561 U.S. 742 (2010)........................................................................19

Milo v. Kelly, 211 A.D.2d 488, 621 N.Y.S.2d 322 (1st Dep't 1995).............................................8

Moore v. Gallup, 267 A.D. 64, 45 N.Y.S.2d 63 (3d Dep't 1943),
    aff'd, 293 N.Y. 846, 59 N.E.2d 439 (1944) ...................................................................6

Mulligan v. Williams, 169 A.D.2d 280, 572 N.Y.S.2d 471 (3d Dep't 1991)..............................7

N.Y. State Rifle & Pistol Ass'n v. City of New York, 590 U.S. ___,
    140 S. Ct. 1525 (2020) .......................................................................................12

N. Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. ___,
    2022 WL 2251305 (Jun. 23, 2022) ....................................................................*passim*

O'Brien v. Keegan, 87 N.Y.2d 436, 663 N.E.2d 316 (1996)...............................................6

Oquendo v. City of New York, 492 F. Supp. 3d 20 (E.D.N.Y. 2020)...........................................9

People ex rel. Darling v. Warden, 154 A.D. 413, 139 N.Y.S. 277 (1st Dep't 1913) ....................3

People v. Carvelto, 123 A.D. 822, 108 N.Y.S. 126 (2d Dep't 1908) ........................................3

Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir. 2008), overruled on other grounds,
    Phelps-Roper v. City of Manchester, 697 F.3d 678 (8th Cir. 2012) ................................18

Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577 (2d Cir. 1989) ...................................17

Preminger v. Principi, 422 F.3d 815 (9th Cir. 2005) ..........................................................18

Proimos v. Fair Automotive Repair, Inc., 808 F.2d 1273 (7th Cir.1987)...................................21

Reese Pub. Co. v. Hampton Int'l Communications, Inc., 620 F.2d 7 (2d Cir. 1980)...................21

Sanchez v. Kelly, 5 Misc. 3d 1024(A), 799 N.Y.S.2d 164 (Supr. Ct., N.Y. Co. Dec. 2, 2004),
    aff'd, 34 A.D.3d 252, 823 N.Y.S.2d 400 (1st Dep't 2006) ........................................9

Santagata v. Woods, 84 A.D.3d 821, 921 N.Y.S.2d 868 (2d Dep't 2011) ................................8

Shapiro v. Cawley, 46 A.D.2d 633, 360 N.Y.S.2d 7 (1st Dep't 1974).....................................11

Shuttlesworth v. Birmingham, 394 U.S. 147 (1969) ............................................................7

Ticheli v. Safir, 255 A.D.2d 272, 680 N.Y.S.2d 840 (1st Dep't 1998) .......................................8

United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011)...............................................19

United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) ......................................................19

Williams v. Bratton, 238 A.D.2d 269, 656 N.Y.S.2d 626 (1st Dep't 1997)...............................8

Winters v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)...................................17

**Statutes**

18 U.S.C. § 921 ...................................................................................................2

1881 N.Y. Laws ch. 676, § 412....................................................................................3

1882 N.Y. Laws ch. 384..............................................................................................3

1882 N.Y. Laws ch. 102 ................................................................................3

1884 N.Y. Laws ch. 46, § 8 .........................................................................3

1905 N.Y. Laws ch. 92, § 2 .........................................................................3

1911 N.Y. Laws ch. 195, § 1 ....................................................................3, 5

1913 N.Y. Laws ch. 608 ..............................................................................5

1935 N.Y. Laws ch. 508, § 1 .......................................................................4

1937 N.Y. Laws ch. 929 ..............................................................................8

1963 N.Y. Laws ch. 136, § 8 .......................................................................5

1965 N.Y. Laws ch. 1030 ............................................................................5

1985 N.Y. Laws ch. 907 ..............................................................................8

2019 N.Y. Laws ch. 104, § 1 .....................................................................12

42 U.S.C. § 1983 ......................................................................................19

N.Y. City Admin. Code § 10-131 ...............................................................8

N.Y. Penal L. § 70.02 .................................................................................3

N.Y. Penal L. § 265.00 ............................................................................2, 4

N.Y. Penal L. § 265.01-B .......................................................................2-3

N.Y. Penal L. § 265.03 ...........................................................................2-3

N.Y. Penal L. § 265.20 ...............................................................................2

N.Y. Penal L. § 400.00 ....................................................................... *passim*

**Rules**

38 RCNY § 5-01 ............................................................................... *passim*

38 RCNY § 5-02 .......................................................................................11

38 RCNY § 5-03 .................................................................................10, 20

38 RCNY § 5-04 .......................................................................................12

38 RCNY § 5-05 .......................................................................................11

38 RCNY § 5-23 .....................................................................................9-12

Fed. R. Civ. P. 65 .....................................................................................21

Fed. R. Civ. P. 12 .....................................................................................22

**Constitutional Provisions**

U.S. Const. amend. II ................................................................................19

U.S. Const. amend. VII .............................................................................21

**<u>Other Authorities</u>**

11A Charles A. Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 2948.2
(3d ed. & Nov. 2018 update) .......................................................................18

1972 N.Y. Op. Att'y Gen. 4, 1972 N.Y. AG Lexis 3 (Dec. 26, 1972) ..........................................7

City of N.Y., City Record, Jun. 21, 2019................................................................11

David D. Jensen, <u>The Sullivan Law at 100: A Century of "Proper Cause" Handgun Licensing
in New York State</u>, 14 N.Y.S.B.A. Gov't, L. & Pol'y J. 6 (2012) ...................................7

**I)      Introduction and Summary**

The individual Plaintiffs are all people who, until relatively recently, held licenses from the New York City Police Department that authorized them to carry handguns in the City of New York. Beginning in 2018, the Defendant Police Commissioner, acting as a "licensing officer" under § 400.00 of the New York Penal Law, denied these Plaintiffs' applications to renew their licenses on the ground that they did not have "proper cause." In doing so, the Police Commissioner relied on § 400.00(2)(f) of the New York Penal Law, which requires "proper cause," and the policies, laws and rules of Defendant City of New York. In this action, the Plaintiffs seek an order enjoining the "proper cause" requirement, declaring it unconstitutional, and otherwise, directing Defendants to grant their renewal applications and issue them licenses.

The Supreme Court's recent decision in <u>New York State Rifle & Pistol Association v. Bruen</u>, 597 U.S. ___, 2022 WL 2251305 (Jun. 23, 2022), mandates this relief. The Supreme Court has now explicitly held that the Second Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home," <u>id.</u> at *5, and it has further ruled that the "proper cause" requirement is unconstitutional "in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms," <u>id.</u> at *34. As such, the "proper cause" requirement at issue here—requiring "extraordinary personal danger" because of either "employment or business necessity" or "recurrent threats to life or safety," 5 RCNY § 5-03(a)-(b)—is a policy choice that is "off the table," see <u>District of Columbia v. Heller</u>, 554 U.S. 570, 636 (2008).

The Plaintiffs here present precise claims and circumstances that, while plainly unconstitutional under <u>Bruen</u>, are more compelling than those presented there. Specifically, the City's standard required the Plaintiffs to show not just an extraordinary degree of personal danger, but one that resulted from either a business or employment reason, or else from recurrent

threats, and the City's rules also required the Plaintiffs to provide a "letter of necessity" and proof of ownership of a business. Beyond this, one of the Plaintiffs (Jeffrey Ortiz) had a license that Defendants limited to certain hours of the day (vis-à-vis to the purpose of hunting and target shooting[1]), while Defendants denied renewal to another Plaintiff (George Greco) because of an asserted need to have a principal place of business in New York City. These distinctions only make the constitutional violations more patent than in <u>Bruen</u>, and accordingly, the Constitution entitles Plaintiffs to relief from the policies, laws and rules at issue here.

This brief details the legislative and interpretive history of the laws and rules at issue here, and it then explains their application to the five individual Plaintiffs. The short of it is that, but for Defendants' use of the unconstitutional "proper cause" standard, each Plaintiff would have a valid license to carry handguns in New York City right now. This brief then proceeds to show that, under <u>Bruen</u>, the laws and rules at issue are plainly unconstitutional. Since further discovery or fact development will in no wise change this, we conclude by explaining that the Court should consolidate the injunction hearing with trial on the merits and issue final relief.

## II)    The Laws and Policies at Issue and their Application to the Plaintiffs

### A)  State Law Prohibits the Unlicensed Possession (or Carry) of Handguns

The New York Penal Law makes it a felony to possess a handgun unless one has a license (or is someone who is exempt, like a police officer). <u>See</u> N.Y. Penal L. §§ 265.01-B, 265.03(b), 265.20(a)(3).[2] By default, the crime is a class E felony with a minimum sentence of

---

[1] <u>See</u> <u>Bruen</u>, 2022 WL 2251305 at *7.

[2] Specifically, Penal Law § 265.01-B provides that "[a] person is guilty of criminal possession of a firearm when he or she . . . possesses any firearm." A person is guilty of criminal possession of a weapon in the second degree (giving rise to the 3.5 year mandatory minimum sentence) if "such person possesses any loaded firearm, "unless "such possession takes place in such person's home or place of business." <u>See</u> N.Y. Penal L. §§ 70.02(3)(b), 265.03(3). The Penal Law defines the term "firearm" to include "any pistol or revolver," as well as a short-barreled rifle, a short shotgun or an "assault weapon," but the term does not include ordinary rifles and shotguns. <u>See</u> <u>id.</u> § 265.00(3). Thus, these particular Penal Law provisions do not generally pertain to ordinary rifles and shotguns.

1½ years imprisonment. See id. §§ 70.02(3)(d), 265.01-B. However, an unlicensed person who possesses a loaded handgun outside his or her home or business faces a mandatory minimum of 3½ years. See id. §§ 70.02(1)(b), 70.02(3)(b), 265.03(3).

The State of New York first required individuals to obtain licenses to possess handguns, or to carry them in any manner, in a 1911 act known as the "Sullivan Law." See 1911 N.Y. Laws ch. 195, § 1, sec. 1896. At the time, restrictions on the basic act of peaceably carrying a gun in public were relatively novel. Three decades prior, in its 1881 codification of the Penal Code, the legislature had included a provision that would have made it misdemeanor for anyone to "carr[y] concealed about his person any kind of fire-arms, being loaded or partly loaded." See 1881 N.Y. Laws ch. 676, § 412. However, the legislature repealed this section of the law before it took effect. See 1882 N.Y. Laws ch. 384; see also id. ch. 102 (extending effective date). Instead, the first law that restricted the basic act of peaceably carrying a gun came in 1884, requiring minors (not adults) to obtain licenses before carrying or possessing guns in public places. See 1884 N.Y. Laws ch. 46, § 8. The first law that restricted adults did not arrive until 1905, only six years prior to the Sullivan Law, and it mandated that adults obtain licenses to carry guns that were concealed, while leaving them free to carry guns in open view without licenses. See 1905 N.Y. Laws ch. 92, § 2; see also People v. Carvelto, 123 A.D. 822, 823-24, 108 N.Y.S. 126 (2d Dep't 1908). The 1911 Sullivan Law restricted both the possession of handguns and their carry in any manner, which was a substantial and unprecedented change. See generally People ex rel. Darling v. Warden, 154 A.D. 413, 423-25, 139 N.Y.S. 277 (1st Dep't 1913).

### B)  State Law Governs the Issuance of Pistol Licenses

---

Note, however, that under federal law, the term "firearm" includes ordinary rifles and shotguns, not just short-barreled ones. See 18 U.S.C. § 921(a)(3).

Article 400 of the Penal Law governs the issuance of handgun licenses and requires an individual to apply to the appropriate "licensing officer," based on where the person "resides, is principally employed or has his or her principal place of business." See N.Y. Penal L. § 400.00(3)(a). In New York City, the licensing officer is the Police Commissioner, while in much of the rest of the State judges serve as licensing officers. See id. § 265.00(10). A person seeking a handgun license must meet a number of eligibility requirements related to (among other things) their age, criminal and mental health background and character. See id. § 400.00(1)(a)-(n). This case does not concern these requirements. Once issued, a license is "effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city." Id. § 400.00(6). The legislature first imposed this "special permit" requirement for New York City in 1935. See 1935 N.Y. Laws ch. 508, § 1.

Subpart (2) of the statute addresses "Types of licenses," four of which could potentially be available to some or all of the private citizen Plaintiffs in this case:

> A license for a pistol or revolver . . . shall be issued to (a) have and possess in his dwelling by a householder; (b) have and possess in his place of business by a merchant or storekeeper; . . . (f) have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof; and (g) have, possess, collect and carry antique pistols.

Id. § 400.00(2). The other licenses in this subpart are for messengers, judges and corrections employees, and they have no application here. See id. Rather, the license implicated here—where the issue is the ability to carry a gun for personal protection—is the subpart (2)(f) license to "have and carry concealed, without regard to employment or place of possession, . . . when proper cause exists." See id. This is the only license that allows a private citizen to carry a

handgun in public for the purpose of self-defense. See Bruen, 2022 WL 2251305 at *6; see also id. at *45 (Breyer, J., dissenting).

The original Sullivan Law provided that local officials would issue licenses "in such manner as may be prescribed by ordinance," but it did not otherwise delineate license types or provide standards. See 1911 N.Y. Laws ch. 195, § 1, sec. 1897. Two years later, however, the legislature amended the law to differentiate between a license "to have and possess" in a dwelling or a business and a license "to have and carry concealed," which would apply more broadly. See 1913 N.Y. Laws ch. 608, § 1. Licensing officials had a "duty" to issue licenses "to have and possess" that authorized "a householder, to have such weapon in his dwelling, and . . . a merchant, or storekeeper, to have such weapon in his place of business," provided the applicant was of "good moral character .  . . and no other denial exists for the denial of such application." See id. They also had a "duty" to issue licenses to "to have and carry . . . concealed" to "a messenger of a banking institution or express company," but only while employed. See id. Otherwise, for "a license to have and carry concealed a pistol or revolver without regard to employment or place," the statute required "proof . . . that the person applying therefor is of good moral character, *and that proper cause exists for the issuance thereof*." Id. (emphasis added). After various amendments and recodifications, "[t]oday's licensing scheme largely tracks that of the early 1900s." Bruen, 2022 WL 2251305 at *5; see N.Y. Penal L. § 400.00(2); 1965 N.Y. Laws ch. 1030, § 400.00(2); 1963 N.Y. Laws ch. 136, § 8, sec. 1903(2). Then, as now, the only license that allows an ordinary private citizen to carry a handgun for self-defense is a license to "have and carry concealed," which requires "proper cause."

**C) The "Proper Cause" Standard Affords Broad Discretion to Deny and Restrict Licenses on the Basis of "Need"**

The New York legislature has never defined the term "proper cause." See Kachalsky v. County of Westchester, 701 F.3d 81, 86 (2d Cir. 2012); Knight v. Bratton, 48 Misc. 3d 536, 541, 13 N.Y.S.3d 799, 804 (Sup. Ct. N.Y. Co. 2015). Likewise, the Court of Appeals has also not adopted any particular "proper cause" standard, although it has upheld two different "proper cause" determinations as being not arbitrary and capricious. See Klenosky v. N.Y. City Police Dep't, 75 A.D.2d 793, 793, 428 N.Y.S.2d 256, 257 (1st Dep't 1980), aff'd, 53 N.Y.2d 685, 421 N.E.2d 503 (1981); Moore v. Gallup, 267 A.D. 64, 66, 45 N.Y.S.2d 63, 65 (3d Dep't 1943), aff'd, 293 N.Y. 846, 59 N.E.2d 439 (1944). In 1996, the Court of Appeals ruled that "it was not unreasonable . . . to restrict petitioner's license" to hunting and target practice where the petitioner had not been able "to demonstrate a need—or much less, any reason—for an unrestricted license." See O'Brien v. Keegan, 87 N.Y.2d 436, 440, 663 N.E.2d 316, 317 (1996). But this articulation—that "proper cause" is "a need," or perhaps just a "reason"—doesn't provide much actual guidance.

In practice, "proper cause" varies some between different New York counties—a reality that some court decisions recognize. In 1978, for example, the First Department observed that "Suffolk and Nassau Counties might have different criteria regarding permits to carry a pistol" than the criteria that NYPD used. See Babernitz v. Police Dep't of City of N.Y., 65 A.D.2d 320, 322, 411 N.Y.S.2d 309, 311 (1st Dep't 1978). And, in 1992, the Westchester County Supreme Court rejected an argument that license restrictions "discriminate between residents of this county and residents of counties that do not utilize restrictions." In re O'Connor, 154 Misc. 2d 694, 698, 585 N.Y.S.2d 1000, 1003 (County Ct., Westchester Co. 1992), aff'd sub nom., O'Connor v. Scarpino, 83 N.Y.2d 919, 615 N.Y.S.2d 305 (1994). The court reasoned that "variations in population density, composition, and geographical location provide ample grounds

upon which to exercise the discretion provided by statute," and that "licensing officers in each county are in the best position to determine whether any interest of the population of their county is furthered by the use of restrictions on pistol licenses." Id. at 698, 585 N.Y.S.2d at 1003-04. A 1972 Attorney General's opinion stated that "the majority" of licensing officials were then issuing restricted licenses, while in 1991, the Attorney General's office represented at oral argument "that about half of the issuing officers in the State adhered to a policy of restrictions on pistol permits." See Mulligan v. Williams, 169 A.D.2d 280, 283, 572 N.Y.S.2d 471, 473 (3d Dep't 1991); 1972 N.Y. Op. Att'y Gen. 4, 1972 N.Y. AG Lexis 3, *3 (Dec. 26, 1972). An article by the undersigned counsel concluded that, as of a decade ago, about half of the counties in the State were routinely issuing unrestricted licenses to "have and carry concealed" to otherwise qualified applicants. See David D. Jensen, The Sullivan Law at 100: A Century of "Proper Cause" Handgun Licensing in New York State, 14 N.Y.S.B.A. Gov't, L. & Pol'y J. 6, 9-10 (2012).

In providing this information, our intent is to provide the Court with a full and candid assessment of the background and current status of the "proper cause" standard. The fact that there is variation in the "proper cause" standard between different licensing officials does nothing to save Defendants' laws, policies and practices from infirmity. To the contrary, unbridled discretion is constitutionally problematic, not salutary. See Bruen, 2022 WL 2251305 at *18 n.9 (citing Shuttlesworth v. Birmingham, 394 U.S. 147, 151 (1969); Cantwell v. Connecticut, 310 U.S. 296, 305 (1940)). All of the Justices on the Supreme Court expressed their understanding that the "proper cause" standard might, other issues aside, "differ[] across counties." See Bruen, 2022 WL 2251305 at *15 n.8; id. at *47 (Breyer, J., dissenting). What is critical is that, whatever differences there might be, the denial of the plaintiffs' licenses for lack

of a "special need" meant that their "constitutional rights to bear arms in public for self-defense were still violated." Id. at *15 n.8.

The standard at issue here ties back to the First Department's 1981 decision in Klenosky v. New York City Police Dep't, 75 A.D.2d 793, 428 N.Y.S.2d 256 (1st Dep't 1980), aff'd, 53 N.Y.2d 685, 421 N.E.2d 503 (1981)—which, not for nothing, is a decision cited to justify the denials at issue in Bruen, see Bruen, 2022 WL 2251305 at *6, *33. There, the court upheld NYPD's denial of a license to carry a handgun on the rationale that the applicant "did not sufficiently demonstrate a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." See Klenosky, 75 A.D.2d at 793, 428 N.Y.S.2d at 257. Since then, courts have upheld NYPD denials of licenses to carry handguns on the basis of the "proper cause" standard articulated in Klenosky. See, e.g., Ticheli v. Safir, 255 A.D.2d 272, 272, 680 N.Y.S.2d 840, 840 (1st Dep't 1998) (quoting Milo v. Kelly, 211 A.D.2d 488, 489, 621 N.Y.S.2d 322, 322 (1st Dep't 1995)); Williams v. Bratton, 238 A.D.2d 269, 270, 656 N.Y.S.2d 626, 627 (1st Dep't 1997) (quoting Klenosky); Knight, 48 Misc. 3d at 541, 13 N.Y.S.3d at 804 (quoting Klenosky). In addition, some courts in other parts of the State have also upheld determinations based on this same articulation of the "proper cause" requirement. See Santagata v. Woods, 84 A.D.3d 821, 821, 921 N.Y.S.2d 868, 868 (2d Dep't 2011) (citing Klenosky) (Orange County); Blank v. Adler, 74 A.D.3d 802, 803, 903 N.Y.S.2d 449, 451 (2d Dep't 2010) (citing Klenosky) (Westchester County); Bando v. Sullivan, 290 A.D.2d 691, 693, 735 N.Y.S.2d 660, 662 (3d Dep't 2002) (quoting Klenosky) (Chenango County); In re Bastiani, 23 Misc. 3d 235, 236, 881 N.Y.S.2d 591, 592 (Sup. Ct. Rockland Co. 2008) (Rockland County).

**D)  New York City's Pertinent Laws and Rules**

The NYPD issues handgun licenses "pursuant to the provisions of article four hundred of the penal law." N.Y. City Admin. Code § 10-131(a). Since its enactment in 1937, the New York City Administrative Code has explicitly recognized that the City's authority to issue handgun licenses is "pursuant to the provisions of" the State's handgun licensing statute. See 1937 N.Y. Laws ch. 929, § 436-5.0(a); see also 1985 N.Y. Laws ch. 907, § 10-131(a) (recodification). The City's current rules provide for several "types" of handgun licenses. See 38 RCNY § 5-01. These are the only handgun licenses that the City issues, and individuals cannot apply for other types of licenses, even if the City previously issued them under prior sets of rules. See Sanchez v. Kelly, 5 Misc. 3d 1024(A), 799 N.Y.S.2d 164, *3 (Supr. Ct., N.Y. Co. Dec. 2, 2004), aff'd, 34 A.D.3d 252, 823 N.Y.S.2d 400 (1st Dep't 2006).

The license that is most pertinent is the "Carry Business License," which is "an unrestricted class of license which permits the carrying of a handgun concealed on the person." 38 RCNY § 5-01(b). The Carry Business license is the New York City license that is "analogous" to a license to "have and carry concealed" under § 400.00(2)(f) of the Penal Law, as it is the only New York City license "which provides for the unrestricted possession of a handgun." See Sanchez, 5 Misc. 3d 1024(A) at *1 n.1; see also Oquendo v. City of New York, 492 F. Supp. 3d 20, 27, 30-31 (E.D.N.Y. 2020) (citing Sanchez). Plaintiffs George Greco, John Winters and Michael Ricatto all held Carry Business licenses, until the NYPD denied their renewal applications.

In addition, the City's rules also provide for a "Limited Carry Business License," which is "a restricted handgun license which permits the licensee to carry [a] handgun . . . to and from specific locations during the specific days and times set forth on the license." 38 RCNY § 5-01(c). "At all other times the handgun shall be safeguarded at the specific address indicated on

-9-

the license, and secured unloaded in a locked container." Id. Plaintiff Jeffrey Ortiz held a Limited

Carry Business license, until the NYPD denied his renewal application.

Finally, this case also implicates the "Special Carry Business License," which is a

"special license" that "permit[s] the carrying of a concealed handgun on the person while the

licensee is in New York City." Id. § 5-01(e)(1). This "Special Carry" license is the "special

permit granting validity" to a New York State handgun license issued outside the City. See N.Y.

Penal L. § 400.00(6); 38 RCNY § 5-23(e). Plaintiff Stephen Insalaco, who has an unrestricted §

400.00(2)(f) license to "have and carry concealed" from Columbia County, held a Special Carry

license until NYPD denied his renewal application. Because he no longer holds a Special Carry

license, his Columbia County handgun license is "not . . . valid in the city of New York"

pursuant to § 400.00(6) of the Penal Law.

Any of these licenses—a Carry Business license, a Limited Carry Business license or a

Special Carry Business license—requires "proper cause." See 38 RCNY §§ 5-01(b)-(c), 5-03.

Notably, a Limited Carry Business license requires proper cause "only for that specific time

frame that the applicant needs to carry a handgun concealed on her/his person." See id. § 5-

01(b)-(c). The City's rule provides that "'[p]roper cause' is determined by a review of all

relevant information bearing on the claimed need of the applicant for the license," and it gives

"examples of factors which shall be considered in such a review" in two subparts. See id. § 5-03.

The first subpart addresses "[e]xposure of the applicant by reason of employment or business

necessity to extraordinary personal danger requiring authorization to carry a handgun" and

provides the example of "[e]mployment in a position in which the applicant routinely engages in

transactions involving substantial amounts of cash, jewelry or other valuables or negotiable

items." See id. § 5-03(a). The second subpart addresses "[e]xposure of the applicant to

extraordinary personal danger, documented by proof of recurrent threats to life or safety requiring authorization to carry a handgun," and as an example, it references "[i]nstances in which Police Department records demonstrate that the life and well-being of an individual is endangered, and that s/he should, therefore, be authorized to carry a handgun." See id. § 5-03(b). However, "the mere fact that an applicant has been the victim of a crime or resides in or is employed in a 'high crime area,' does not establish 'proper cause'." Id. Anyone applying for a carry license must submit a "letter of necessity [that] explains the need for the license" pursuant to 38 RCNY § 5-05(b)(8). If the individual cites needs that are related to a business, then they must also provide "proof of ownership for that business." 38 RCNY § 5-05(b)(7).

The City's rules also provide for several other types of handgun licenses that, while not directly implicated here, are still pertinent to the overarching regulatory scheme. First, the City's rules provide for a "Premise License – Business or Residence," which is a "restricted handgun license" under which "[t]he handgun shall be safeguarded at the specific address indicated on the license, except when the licensee transports or possesses such handgun consistent with the[ City's] Rules." Id. § 5-01(a). A "Residence Premises" license is analogous to a "housekeeper" license under Penal Law § 400.00(2)(a), and a "Business Premises" license is analogous to a "merchant or storekeeper" license under § 400.00(2)(b). Unlike the licenses discussed above, and in accordance with the language of the Penal Law, Residence Premises and Business Premises licenses do not require "proper cause." See N.Y. Penal L. § 400.00(2)(a)-(b); 38 RCNY § 5-02; see also Shapiro v. Cawley, 46 A.D.2d 633, 634, 360 N.Y.S.2d 7, 8 (1st Dep't 1974). Plaintiffs George Greco and Jeffrey Ortiz hold Residence Premises licenses.

While Residence Premises and Business Premises licenses generally authorize possession only "at the specific address indicated on the license," 38 RCNY §§ 5-01(a), 5-23(a), they also

authorize individuals to "transport" licensed handguns, "unloaded, in a locked container" in certain additional circumstances, see id. § 5-23(a)(3)-(6). Specifically, an individual can transport an unloaded and locked gun, with "ammunition to be carried separately," to "[a]nother residence, or place of business, . . .  where the licensee is authorized to possess such handgun" or to "[a] lawful small arms range/shooting club or lawful shooting competition," as well as "directly from the place of purchase to the address specified on the license." See id. § 5-23(a)(3)(i)-(ii), (a)(6).[3] Furthermore, a licensed individual can also "transport her/his handgun(s), unloaded, in a locked container, without ammunition, to or from the offices of the License Division, or the licensee's local police precinct, as authorized by these Rules." Id. § 5-23(a)(5). Last, a licensee that obtains a "'Hunting Authorization' Amendment attached to his/her license" can "transport" a licensed handgun to an authorized New York State hunting area, again "unloaded, in a locked container, the ammunition to be carried separately." Id. § 5-23(a)(4). Under any of these circumstances, "[t]ransport within New York City . . . shall be continuous and uninterrupted." Id. § 5-23(a)(7).

Finally, the City issues both a "Carry Guard License" and a "Gun Custodian License," which are "restricted types of carry licenses, valid when the holder is actually engaged in a work assignment as a security guard or gun custodian." Id. 38 RCNY § 5-01(d). The City also issues "Special" Carry Guard and Gun Custodian licenses to individuals with New York handgun licenses from outside the City, and these are likewise "restricted types of special licenses that

---

[3] The City's rules did not allow holders of Residence Premises or Business Premises licenses to transport handguns to other residences or business locations, or to ranges or competitions outside New York City, prior to an amendment in 2019. See City of N.Y., City Record, Jun. 21, 2019, at 3095-96. At this same time, the legislature amended Penal Law § 400.00(6) to expressly provide that "any license to have and possess a pistol or revolver in the licensee's dwelling or place of business" would also allow transport and possession under these circumstances. See 2019 N.Y. Laws ch. 104, § 1. Following these amendments, the United States Supreme Court concluded that a challenge to City rules that prohibited such transport and possession had become moot. See N.Y. State Rifle & Pistol Ass'n v. City of New York, 590 U.S. ___, 140 S. Ct. 1525, 1526 (2020).

permit the carrying of a concealed handgun on the person only when the licensee is actually engaged in the performance of her/his duties as a security guard or gun custodian." <u>See</u> <u>id.</u> § 5-01(e)(2). For any of these licenses, an applicant must "demonstrate the *employer's* need to employ armed security guards/gun custodians," <u>see</u> <u>id.</u> § 5-04(a) (emphasis added), so they are by definition not available to individuals who seek to protect themselves and their families.

**E)  Defendants' Denial of the Plaintiffs' Renewal Applications**

Each of the individual Plaintiffs held a license to carry a handgun in New York City until, beginning in 2018, the NYPD License Division denied their renewal applications for lack of "proper cause." As things stand, the only reason these five individuals no longer have licenses is because Defendants denied their renewal applications for lack of "proper cause." However, that "proper cause" standard is unconstitutional, so there is no constitutional reason to withhold Plaintiffs' renewal licenses from them now.

First is Plaintiff George Greco, a Rockaway (Queens) resident who held a Carry Business license since 2004. See G. Greco Dec. ¶¶ 2, 4. He renewed his license without incident in 2006, 2009, 2012 and 2015. See id. ¶ 5. However, when he applied to renew the license in June 2018, providing the same essential documentation he had provided in the past, the NYPD License Division denied his application because "the documentation you provided . . . does not establish 'proper cause' for a Business Carry License[.]" See id. ¶ 7 & ex. 3. Specifically, the "documentation . . . does not establish that you are in extraordinary personal danger" and "you have not demonstrated a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." Id. Mr. Greco challenged the denial in an administrative appeal, and on April 22, 2019, the License Division upheld its original denial—and also asserted a new ground for the denial. See id. ¶ 10 & ex. 4. The new ground was that "[w]hen the basis for a carry license stems from the applicant's business, the Rules of the City of New York require that the applicant's principal place of business be located in New York City." Id. However, the License Division had itself used Mr. Greco's New Jersey business address when it first licensed him in 2004, and when it renewed his license in 2006. See id. ¶ 11.

Both Plaintiffs John Winters and Michael Ricatto had both held licenses to carry handguns in New York City for decades—but nonetheless, the NYPD License Division denied

their renewal applications for lack of "proper cause" during the year 2020. Mr. Winters is a

Staten Island resident who has a uniform and police supply business in Brooklyn. See J. Winters

Dec. ¶¶ 2-3. Previously, he operated a check cashing business. See id. ¶ 3. The NYPD has issued

Mr. Winters licenses to carry handguns in New York City off and on since the 1960s. See id. ¶ 4.

Most recently, the NYPD issued Mr. Winters a "Limited Carry" license in 2013, which allowed

him to carry a handgun on the premises of the store and while commuting. See id. ¶ 6. In 2015,

the NYPD replaced Mr. Winters's restricted license with a "Carry Business" (i.e. unrestricted)

license. See id. ¶¶ 5-6. Mr. Winters renewed his Carry Business license without incident in 2017,

but when he applied to renew it in 2020—providing the same essential documentation he had

provided previously—the NYPD License Division advised him that he had "failed to establish

proper cause to have [his] license renewed" because he had not shown "extraordinary personal

danger." See id. ¶¶ 7-9 & Ex. 3. Instead, the License Division advised Mr. Winters that it could

"offer [him] a Premise Business license," and that the "offer [was] not negotiable." See id. ¶ 10

& Ex. 4. Mr. Winters did not accept the offer and instead joined this lawsuit. See id. ¶ 11.

      Similarly, the NYPD had issued Michael Ricatto various licenses to carry handguns since

1979. See M. Ricatto Dec. ¶ 4. Mr. Ricatto is a 65 year-old resident of both Broward County,

Florida and Queens, New York, who runs a property management and auction business in

Queens. See id. ¶¶ 1-3. Most recently, in 2013, the NYPD had issued Mr. Ricatto a "Limited

Carry" handgun license that authorized him to carry a gun between 6:00 a.m. and 6:00 p.m. on

Mondays, Wednesdays and Fridays. See id. ¶ 6. In 2014, the NYPD replaced Mr. Ricatto's

restricted handgun license with a Business Carry license, which he renewed without incident in

2016. See id. ¶ 7. However, when Mr. Winters applied to renew his license in 2019, the NYPD

denied it for lack of "proper cause," even though he had provided the same essential

documentation that had previously been deemed adequate to obtain a license. See id. ¶¶ 9-11. Specifically, the NYPD found that Mr. Ricatto "d[id] not establish 'proper cause' for a Business Carry License" because his "documentation" did not "establish" that he was "in extraordinary personal danger" or had "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." Id. ¶ 11 & Ex. 3.

Jeffrey Ortiz is a 42 year-old man who operates a liquor store in the East New York neighborhood of Brooklyn. See J. Ortiz Dec. ¶¶ 1-3. The East New York area is one of the highest crime areas of New York City. See id. ¶ 4. In 2014, Mr. Ortiz applied to NYPD for a license to carry a handgun, and in 2015, the NYPD issued Mr. Ortiz a "Limited Carry" license that authorized him to carry a gun between the hours of 6:00 a.m. and 12:00 a.m. (midnight). See id. ¶ 5. However, when Mr. Ortiz applied to renew his license in 2017, the NYPD denied his application for lack of "proper cause," even though he provided the same basic documentation that he had provided back in 2014. See id. ¶¶ 6, 11 & Ex. 3. Before it denied his application, the NYPD offered to issue Mr. Ortiz a Business Premises license (as it had with Mr. Winters) and it also offered to issue Mr. Ortiz a Limited Carry license that would have allowed Mr. Ortiz to carry a gun only while traveling between the store, his home and the bank. See id. ¶¶ 9-10. Mr. Ortiz rejected these offers, and the NYPD then denied his application for lack of "proper cause" in that his "business does not place [him] in extraordinary personal danger and [he] failed to demonstrate that [he] ha[d] a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." Id. ¶ 11 & Ex. 3.

Finally, Steven Insalaco is a 76 year-old man who lives in Columbia County, New York and has a second residence in Manhattan. See S. Insalaco Dec. ¶¶ 1-2. He is the President of Calgary Enterprises, which is an operating, management and real estate company headquartered

at his residence in Manhattan. See id. ¶ 3. In 2005, authorities in Columbia County issued Mr. Insalaco an unrestricted license to carry a handgun pursuant to § 400.00(2)(f) of the Penal Law, which required a finding of "proper cause." See id. ¶ 4. In 2012, the NYPD issued Mr. Insalaco a "Special Carry" handgun license, which authorized him to carry a handgun in New York City notwithstanding the language in Penal Law § 400.00(6) providing that New York State handgun licenses are generally not "valid" in New York City. See id. ¶¶ 5-6. And, in 2015, the NYPD approved Mr. Insalaco's application to renew his Special Carry license. See id. ¶ 6. However, and as with the other Plaintiffs, Mr. Insalaco had problems when he tried to renew his license in 2018, even though he provided the same essential documentation that he had provided in 2012 and 2015. See id. ¶ 7. As it did with the other Plaintiffs, the NYPD denied Mr. Insalaco's application for lack of "proper cause." See id. ¶ 8 & Ex. 3. Specifically, the NYPD found that Mr. Insalaco's "documentation" did not show that he was "in immediate personal danger due to [his] business" or that there were "threats to [his] life or any incidents where [he] w[as] placed in extraordinary personal danger." Id. Mr. Insalaco then pursued an administrative appeal, which NYPD rejected. See id. ¶¶ 9-10. Among other things, the NYPD advised Mr. Insalaco that "[t]he fact that the License Division previously approved [his] original and renewal applications does not mean that it can rubberstamp [his] current renewal application." Id. ¶ 10 & Ex. 4.

Each individual Plaintiff continues to meet the same basic qualifications for licensure that they met when the previously obtained and renewed their licenses. See G. Greco Dec. ¶ 17; J. Winters Dec. ¶ 14; M. Ricatto Dec. ¶ 13; J. Ortiz Dec. ¶ 17; S. Insalaco Dec. ¶ 14. Furthermore, all of the Plaintiffs continue to hold valid gun licenses, and most hold valid licenses from New York State and/or City—making it self-evident that there has been no material change in circumstances. Specifically, George Greco and Jeffrey Ortiz both hold valid Residence Premises

licenses and Rifle & Shotgun Permits that the NYPD issued, and further, Mr. Greco holds a

NYPD-issued gun custodian license on behalf of an organization. See G. Greco Dec. ¶¶ 13-15; J.

Ortiz Dec. ¶ 14. John Winters holds a valid NYPD-issued Rifle & Shotgun Permit. See J.

Winters Dec. ¶ 12. Steven Insalaco continues to hold an unrestricted license to "have and carry

concealed" from authorities in Columbia County, New York, and he also has a valid NYPD-

issued Rifle & Shotgun Permit. See S. Insalaco Dec. ¶ 11. Finally, Michael Ricatto (who, again,

is a partial resident of Florida) has licenses to carry handguns from the States of Florida,

Pennsylvania and Utah. See M. Ricatto Dec. ¶ 8.

III)   **The Court Should Issue a Preliminary Injunction Because the Plaintiffs are Likely to Succeed on the Merits**

Four factors govern the issuance of a preliminary injunction. See Winters v. Natural

Resources Defense Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted). Specifically, the

Plaintiffs can obtain a preliminary injunction by showing that: (1) they are "likely to succeed on

the merits;" (2) they are "likely to suffer irreparable harm in the absence of preliminary relief;"

(3) "the balance of equities tips in [their] favor," and (4) an "injunction is in the public interest."

See id.[4] In light of the Supreme Court's ruling, the Plaintiffs meet these requirements readily—

and indeed, overwhelmingly.

A)  **Here, the Essential Consideration is the Likelihood of Success on the Merits**

An "irreparable" injury—an essential requisite for relief in equity—is an "injury for

which a monetary award cannot be adequate compensation." See Jackson Dairy, Inc. v. H.P.

Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (citations omitted); accord Int'l Dairy Foods

---

[4] In addition, Second Circuit precedent requires movants seeking "to stay government action taken in the public interest pursuant to a statutory or regulatory scheme" to show "a likelihood that [they] will succeed on the merits." See Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989). Because Plaintiffs are not invoking the "serious questions" standard, this does not appear to add anything to the analysis here. See generally Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35-38 (2d Cir. 2010).

Ass'n v. Amestoy, 92 F.3d 67, 71 (2d Cir. 1996). The Plaintiffs' claimed injury is the deprivation

of their right to bear arms, and the law presumes that deprivations of personal constitutional

rights are irreparable. See Agudath Israel of America v. Cuomo, 983 F.3d 620, 636 (2d Cir.

2020) (quoting Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996)); see also Ezell v. City of

Chicago, 651 F.3d 684, 699-700 (7th Cir. 2011). If the Plaintiffs succeed on the merits, then they

are suffering irreparable injury right now—and the only thing that will stop that injury is this

Court's order. Thus, if the Plaintiffs are likely to succeed on the merits, then they are duly likely

to suffer irreparable harm in the absence of preliminary relief.

Just the same, "it is always in the public interest to prevent the violation of a party's

constitutional rights." See Liberty Coins, LLC v. Goodman, 748 F.3d 682, 690 (6th Cir. 2014)

(quoting Connection Distributing Co. v. Reno, 154 F.3d 281, 288 (6th Cir.1998)); see also Free

the Nipple-Fort Collins v. City of Fort Collins, 916 F.3d 792, 807 (10th Cir. 2019); Preminger v.

Principi, 422 F.3d 815, 826 (9th Cir. 2005). And, "'even a temporary loss'" of a constitutional

right "usually trumps any harm to the defendant." See Free the Nipple, 916 F.3d at 806 (quoting

11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2948.2 & n.10 (3d

ed. & Nov. 2018 update)); see also Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008),

overruled on other grounds, Phelps-Roper v. City of Manchester, 697 F.3d 678 (8th Cir. 2012).

Thus, or all practical purposes, these factors are equally contingent on the merits of Plaintiffs'

constitutional claim. See Liberty Coins, 748 F.3d at 690 (quoting Connection Distributing, 154

F.3d at 288); Phelps-Roper, 545 F.3d at 690. If the Defendants are violating the Plaintiffs'

constitutional rights, then the public interest and balance of equities are against the Defendants.

Thus, if the Plaintiffs are likely to succeed on the merits, then they also plainly meet the

other three factors.

**B)  Plaintiffs are Likely to Succeed Because the Second Amendment Secures a Personal Right to Carry Handguns for Self-Defense**

Defendants are liable if they acted under color of law to deprive the Plaintiffs "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The City and its Police Commissioner were plainly operating under color of law when they denied the Plaintiffs' renewal applications under § 400.00(2)(f) and the City's laws and rules, so the decisive question is whether those denials deprived the Plaintiffs of their right to bear arms. In light of the Supreme Court's decision in Bruen, the only answer to this question is, "yes."

To begin, the Second Amendment protects "the right of the people to keep and bear arms." U.S. Const. amend. II. These terms "guarantee the individual right to possess and carry weapons." District of Columbia v. Heller, 554 U.S. 570, 592 (2008). And, the "core lawful purpose" of this right is "self-protection." Id. at 630; accord McDonald v. Chicago, 561 U.S. 742, 768 (2010). Notwithstanding all this, the Second Circuit upheld the "proper cause" requirement after the Supreme Court decided Heller and McDonald. See Kachalsky v. County of Westchester, 701 F.3d 81, 101 (2d Cir. 2012). The Second Circuit reasoned that the Second Amendment's "'core' protection" was "self-defense in the home," see id. at 93, and that under "intermediate scrutiny" the "proper cause" requirement needed only to be "substantially related to the achievement of an important governmental interest," see id. at 96-97 (citing United States v. Masciandaro, 638 F.3d 458, 471 (4th Cir. 2011); United States v. Skoien, 614 F.3d 638, 641-42 (7th Cir. 2010); Ernst J. v. Stone, 452 F.3d 186, 200 n.10 (2d Cir.2006)).

In Bruen, the Supreme Court decisively rejected that approach with two key holdings. First, the Court eliminated any doubt about the scope of the Second Amendment's protection by "hold[ing], consistent with Heller and McDonald, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." See Bruen,

2022 WL 2251305 at *5. Next, the Court disclaimed the intermediate scrutiny approach by "hold[ing] that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." See id. at *8. To justify a regulation, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. An "important interest" was insufficient. See id.

The Court then applied this analytic framework to the "proper cause" requirement. See id. at *14. After reviewing various historical authorities cited by the State (and City) of New York, the Court concluded that the "proper cause" requirement "violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." Id. at *34. It was true that "the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms." See id. at *18. However, these types of traditional restrictions did not "operate[] to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose." Id. at *28. Moreover, the Court specifically rejected the suggestion that the City of New York could be deemed a "sensitive place" where it would be permissible to ban the bearing of arms. See id. at *14.

While Bruen concerned officials applying the "proper cause" standard in Rensselaer County, not New York City, there is no room for dispute that the Court was rejecting the same substantive standard that is used in New York City, as that standard is set forth in the Rules of the City of New York itself. See 38 RCNY § 5-03. And even so, the "proper cause" standard that the Court articulated—and rejected—is one that was constructed by "cit[ing] only to cases originating in New York City," Bruen, 2022 WL 2251305 at *46 (Breyer, J., dissenting) (citing

-21-

Martinek v. Kerik, 294 A.D.2d 221, 743 N.Y.S.2d 80 (1st Dep't 2002); Kaplan v. Bratton, 249

A.D.2d 199, 673 N.Y.S.2d 66 (1st Dep't 1998); Bernstein v. Police Dep't of the City of N.Y., 85

A.D.2d 574, 445 N.Y.S.2d 716 (1st Dep't 1981); Klenosky v. N.Y. City Police Dep't, 75 A.D.2d

793, 428 N.Y.S.2d 256 (1st Dep't 1980)). The Court's reasoning concerned the City's own

espoused reasoning and policies from the not-too-distant past.

**IV)   The Court Should Consolidate this Motion with Trial on the Merits and Issue a
Permanent Injunction**

Rule 65 authorizes the Court to "advance the trial on the merits and consolidate it with

the hearing," Fed. R. Civ. P. 65(a)(2), and a court has "broad discretion" to do so in the absence

of "substantial prejudice," see Abraham Zion Corp. v. Lebow, 761 F.2d 93, 101 (2d Cir. 1985).[5]

Indeed, "when the eventual outcome on the merits is plain at the preliminary injunction stage, the

judge should, after due notice to the parties, merge the stages and enter a final judgment." Curtis

1000, Inc. v. Suess, 24 F.3d 941, 945 (7th Cir. 1994) (citing Fed. R. Civ. P. 65(a)(2); Proimos v.

Fair Automotive Repair, Inc., 808 F.2d 1273, 1277-78 (7th Cir.1987)); see also Drummond v.

Fulton Co. Dep't of Family & Children's Servs., 563 F.2d 1200, 1204 (5th Cir. 1977)

(consolidation is appropriate when a dispute is of an "essentially legal nature" and there is a

"need for prompt action"). The essential consideration is whether the consolidation of the

preliminary and final hearings will prevent a party from presenting relevant or material evidence.

See Abraham, 761 F.2d at 102; Reese Pub. Co. v. Hampton Int'l Communications, Inc., 620 F.2d

7, 12 (2d Cir. 1980). And here, it is abundantly clear that consolidation will not—for two

independent reasons.

---

[5] Notably, while "the court must preserve any party's right to a jury trial," Fed. R. Civ. P. 65(a)(2), there is no right to a jury trial here because the Plaintiffs do not seek money damages. See Amended Complaint (Doc. No. 20) pp. 18-20; see also U.S. Const. amend. VII; City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 710-11 (1999).

The first and most pertinent is that, in light of the Supreme Court's decision overturning the same "proper cause" standard this case concerns, there are simply no material or relevant facts that could possibly change the outcome. The analytic approach that the Court adopted looks to the state of affairs in 1791 (and perhaps 1868),[6] and again, the Court has *already* applied this approach to all of the pertinent historical authorities that the State of New York, the other parties and well over 100 amici could identify. It was only after doing so that the Court concluded that "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." See Bruen, 2022 WL 2251305 at *34. Since the Supreme Court has already decided the question presented in this action, there is no amount of discovery that will change the outcome here.

And indeed, it is also significant that the Supreme Court specifically rejected the claim that further evidentiary development was necessary to decide the case, which had come before the Court on appeal from a Rule 12(b)(6) motion to dismiss. In his dissent, Justice Breyer repeatedly criticized the majority for deciding the case "without the benefit of discovery or an evidentiary record." Id. at *40 (Breyer, J., dissenting); see also id. at *44, *46-47, *49. However, the Court explained that because "a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense," no further development of evidence was necessary. See id. at *15 n.8. The plaintiffs' complaint "allege[d] that they were denied unrestricted licenses because they had not 'demonstrate[d] a special need for self-defense that distinguished [them] from the general public,'" and that allegation, if proven, meant that the plaintiffs' "constitutional rights to bear arms in public for

---

[6] The Court did not resolve this issue. See Bruen, 2022 WL 2251305 at *17; see also id. at *40 (Barrett, J., concurring).

self-defense were still violated," regardless of any fine nuances of the standard's application between zip codes. See id. The same is true here: The Defendants violated the Plaintiffs' constitutional rights when they denied the Plaintiffs' renewal license applications because they did not have a "special need" for self-protection, regardless of the fine details of precisely who they might have approved.

But even were this not the case—that is, even if the Supreme Court had not already disclaimed the need for more factfinding to decide the issue presented here—it would still be manifestly appropriate to consolidate the trial with the preliminary hearing on the circumstance presented here. This is because fact discovery, whether it was ever necessary in the first place, is already complete. The Court's original scheduling order required the parties to complete all depositions by June 10, 2021 and all fact discovery by June 24, 2021. See Doc. No. 25, ¶¶ 7(d), 9. On June 24, 2021, at the parties' request, the Court enlarged the remaining fact discovery deadline by 30 days, to July 26, 2021. See Doc. No. 29. At that time, the deadline for taking any depositions had already passed, and no parties had served deposition notices. The parties' June 24, 2021 letter advised the Court that "the majority of written discovery is complete." Id. Then, on August 4, 2021—over a week after the fact discovery period had ended—the parties requested a stay "until after a decision is rendered by the United States Supreme Court" in Bruen. See Doc. No. 31 p. 1. In short, fact discovery was already over when the parties requested the stay, and it remains over right now. The only thing left to do is decide this case on the merits, which consolidation will facilitate.

## V)   Conclusion

For these reasons, the Plaintiffs respectfully request that the Court (as set forth in further detail in the Notice of Motion) issue an order directing Defendants to grant the Plaintiffs'

renewal applications and issue them licenses, declare the "proper cause" requirement

unconstitutional and enjoin its enforcement.

Dated:  New York, New York
        June 29, 2022

                                   DAVID JENSEN PLLC

                              By: _____
                                   David D. Jensen, Esq.
                                   33 Henry Street
                                   Beacon, New York 12508
                                   Tel:  212.380.6615
                                   Fax:  917.591.1318
                                   david@djensenpllc.com

                                   *Attorney for Plaintiffs*